UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-08154-MRA-AGR | Date | October 8, 2024 |
| Title | Luz Zendejas v. Mehri Salek Taghizadeh, et al. | | |

| | |
|---|---|
| Present: The Honorable | MÓNICA RAMÍREZ ALMADANI, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Gabriela Garcia | None Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings: (IN CHAMBERS) ORDER DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS**

Before the Court is Plaintiff's Response to the Court's June 20, 2024, Order to Show Cause (the "Response"). ECF 11. The Court has read and considered the Response. For the reasons stated herein, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim and related state law claims and hereby **DISMISSES** the claims without prejudice.

## I. BACKGROUND[1]

Plaintiff Luz Zendejashas a physical disability and requires the use of a wheelchair. ECF 1 ¶ 1. Defendants Mehri Salek Taghizadeh, Harris Jay Fuller, and Does 1-10 (collectively, "Defendants") are, or were at the time of the incident, the real property owners, business operators, lessors and/or lessees of the real property for a beauty salon (the "Business") located in Tarzana, California. *Id.* ¶ 2. The Business is a place of public accommodation. *Id.* ¶ 11. In or about June 2024, Plaintiff went to the Business and encountered various accessibility barriers. *Id.* ¶¶ 10, 12-14.

On September 23, 2024, Plaintiff filed the instant action against Defendants, asserting claims for (1) injunctive relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12010-12213; (2) damages pursuant to California's Unruh Civil

[1] The factual background is described as alleged in Plaintiff's Complaint. *See* ECF 1.

Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51-53; (3) damages pursuant to California's Disabled Persons Act ("DPA"), Cal. Civ. Code § 54; (4) damages and injunctive relief pursuant to California's Health and Safety Code, Cal. Health & Safety Code § 19955; and (5) negligence. ECF 1.

On September 27, 2024, the Court ordered Plaintiff to show cause why the Court should exercise supplemental jurisdiction over Plaintiff's state law claims. ECF 9. The Court specifically ordered Plaintiff and Plaintiff's Counsel to (1) "identify the amount of statutory damages sought" and (2) include declarations "providing all facts necessary for the Court to determine if Plaintiff and Plaintiff's Counsel satisfy the definition of a 'high-frequency litigant' as provided by California Code of Civil Procedure section 425.55(b)(1)-(2)." *Id.* at 3. Plaintiff filed a Response on October 7, 2024. ECF 11.

## II. <u>LEGAL STANDARD</u>

A district court may exercise supplemental jurisdiction over "all other claims that are so related to the claims in the action within such original jurisdiction that form part of the same case or controversy under Article III of the U.S. Constitution." 28 U.S.C. § 1367(a). That a court *may* exercise supplemental jurisdiction, however, "does not mean that jurisdiction *must* be exercised in all cases." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997). Supplemental jurisdiction is ultimately "a doctrine of discretion, not of plaintiff's choice." *Id.* (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Under the supplemental jurisdiction statute, a district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c).

The Ninth Circuit does not require an "explanation for a district court's reasons when the district court acts under any of the first three provisions." *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998). A district court invoking section

1367(c)(4)'s "exceptional circumstances" provision, however, must satisfy a two-part inquiry: (1) the "district court must 'articulate why the circumstances of the case are exceptional' within the meaning of § 1367(c)(4)," *Arroyo v. Rosas*, 19 F. 4th 1202, 1210 (9th Cir. 2021) (quoting *Exec. Software N. Am., Inc. v. U.S. Dist. Ct.*, 24 F.3d 1545, 1555-56 (9th Cir. 1994)), and (2) "in determining whether there are compelling reasons for declining jurisdiction . . . the court should consider what 'best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine,'" *id.* (quoting *Int'l Coll. of Surgeons*, 522 U.S. at 172-73). "These two inquiries are 'not particularly burdensome.'" *Id.* at 1211 (quoting *Exec. Software*, 245 F.3d at 1558). To satisfy the "case-specific" inquiry under section 1367(c)(4), the Court "need only identify the exceptional circumstances [and compelling reasons] and confirm that they apply to the *particular case* before it." *Vo v. Choi*, 49 F.4th 1167, 1173 (9th Cir. 2022)

## III. <u>DISCUSSION</u>

### A. The ADA and Unruh Act

The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Under the ADA, injunctive relief is the only remedy available to a private litigant. 42 U.S.C. § 12188(a).

In passing the Unruh Act, however, California "chose a different route" and created "a state law cause of action that relies dispositively on the ADA's substantive rules but that expands the remedies available in a private action." *Arroyo*, 19 F.4th at 1211. Under the Unruh Act, all persons in California, "no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). A violation of the ADA constitutes a violation of section 51 of the Unruh Act. *Id.* § 51(f). Yet unlike the ADA, the Unruh Act not only provides for injunctive relief, but also allows for recovery of monetary damages for every offense "up to a maximum of three times the amount of actual damages but in no case less than four thousand dollars ($4,000)." *Id.* § 52(a). "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski v. M.J. Cable., Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).

Here, according to the Response, Plaintiff seeks a single statutory minimum penalty of $4,000. ECF 11 at 5.

### B. California's Limitations on the Filing of Construction-Related Accessibility Claims

The availability of treble damages under the Unruh Act has resulted in serial litigants "frequently target[ing] 'small businesses on the basis of boilerplate complaints' to pursue 'quick cash settlements rather than correction of the accessibility violation.'" *Arroyo*, 19 F.4th at 1207 (quoting Cal. Civ. Proc. Code § 425.55(a)(2)).

To address "concern[s] that high-frequency litigants may be using the [Unruh Act] to obtain monetary relief for themselves without accompanying adjustments to locations to assure accessibility to others," California implemented a series of procedural reforms. *Id.* at 1211-12; *see also* Cal. Civ. Proc. Code § 425.55(a)(2). In 2012, the Legislature adopted a heightened pleading standard for any "construction-related accessibility claim" under the Unruh Act. *See* Cal. Civ. Proc. Code § 425.50(a) (2013). A "construction-related accessibility claim" is defined as "any civil claim in a civil action with respect to a place of public accommodation, including but not limited to, a claim brought under Section 51, 54, 54.1, or 55, based wholly or in part on an alleged violation of any construction-related accessibility standard." Cal. Civ. Code § 55.52(a)(1). The heightened standard requires any plaintiff bringing a construction-related accessibility claim to file a verified complaint containing specific facts "sufficient to allow a reasonable person to identify the basis of the violation or violations supporting the[ir] claim." *Id.* §§ 425.50(a)(1)-(3), (b)(1).

In 2015, the Legislature imposed additional requirements on certain "high-frequency litigants." *See Arroyo*, 19 F.4th at 1207. Under California law, a "high-frequency litigant" is defined as:

> A plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation.

Cal. Civ. Code § 425.55(b)(1). Attorneys may also fall within the definition of high-frequency litigants. *Id.* § 425.55(b)(2).

Under the special pleading rules, a high-frequency litigant must disclose:

> (1) whether the complaint is filed by, or on behalf of, a high-frequency litigant; (2) in the case of a high-frequency litigant who is a plaintiff, the number of complaints alleging construction-related accessibility claims filed by the high-frequency litigant during the 12 months prior to filing the instant complaint; (3) the reason the individual was in the geographic area of the defendant's business; and (4) the reason why the individual desired to access the defendant's business.

*Id.* § 425.50(a)(4)(A)) (2015). The California Legislature also imposed a "high-frequency litigant fee," requiring high-frequency litigants to pay a $1,000 filing fee at the time of the filing of the initial complaint in addition to the standard civil filing fee. *See* Cal. Gov't Code § 70616.5 (2015).

Based on Plaintiff's Response, Plaintiff and Plaintiff's Counsel fall within the definition of "high-frequency litigants" alleging "construction-related accessibility claims." Specifically, Plaintiff's Counsel concedes that his law firm "likely qualifies as a high-frequency litigant, . . . as the law firm has represented as attorney of record 10 or more high-frequency litigant plaintiffs in actions that were resolved within the 12-month period immediately preceding the filing of the current complaint." ECF 11-1 (Kim Decl.) ¶ 2. Plaintiff likewise admits to qualifying as a high-frequency litigant. ECF 11-2 (Zendejas Decl.) ¶ 4. Consequently, had Plaintiff and Plaintiff's Counsel filed the Complaint in state court, they would have been subject to the heightened pleading requirements and special pleading rules described above.

## C. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims

### *1. Exceptional Circumstances*

"Exceptional circumstance" under section 1367(c)(4) includes "at the very least . . . highly unusual situations that threaten to have a substantial adverse impact on the core *Gibbs* values of 'economy, convenience, fairness, and comity.'" *Arroyo*, 19 F.4th at 1211 (quoting *Int'l Coll.*, 522 U.S. at 172-73). In *Arroyo*, the Ninth Circuit recognized that the same circumstances underlying this case were "exceptional" in "any meaningful sense of

the term." 19 F.4th at 1213.

California's heightened pleading standards for construction-related accessibility claims and increased filing fees for high-frequency litigants "ma[de] it very unattractive to file such Unruh Act suits in state court," but because these procedural requirements do not apply in federal court, it became "very attractive to file them in federal court . . . . by pairing the Unruh Act with a companion ADA claim for injunctive relief." *Id.* at 1212. This situation has resulted in a "wholesale shifting of Unruh Act/ADA cases into the U.S. District Court for the Central District of California (and perhaps the other California federal courts as well)." *Id.* District-wide statistics compiled by the Central District Clerk's Office and data from the California Commission on Disability Access bear out this outcome,[2] confirming that a "post-2015 surge in ADA filings in the Central District was caused by California's 2015 adoption of new procedural requirements that placed substantial burdens on filing [ADA/Unruh Act] cases in state court." *Id.* This shift of ADA-based Unruh Act cases to federal court has thwarted the California Legislature's goal of providing damages relief for ADA violations while limiting the financial burdens that California's businesses may face from damages actions. *See id.* Instead, "the procedural strictures that California put in place have been rendered largely toothless," because Unruh Act plaintiffs can readily evade them by filing their statutory damages claims in federal court. *Id.*

*Arroyo* recognized that this "highly unusual systemic impact on ADA-based Unruh Act cases" presents a "very substantial threat to federal-state comity." *Id.* at 1211, 1212. So much so that "retention of supplemental jurisdiction over ADA-based Unruh Act claims threatens to substantially thwart California's carefully crafted reforms in this area and to deprive the state courts of their critical role in effectuating the policies underlying those reforms." *Id.* at 1212. Regarding the first prong of the § 1367(c)(4) inquiry, Plaintiff's Response is laden with contradictions: Plaintiff all but concedes that *Arroyo* controls, but erroneously relies upon since-abrogated district court opinions to maintain that there are

---

[2] *See generally Ann. Stat. Reps.*, U.S. Dist. Ct. Cent. Dist. of Cal., https://www.cacd.uscourts.gov/annual-statistical-reports; *Ann. Reps. to the Legis.*, Cal. Comm'n on Disability Access, https://www.dgs.ca.gov/CCDA/Resources/Page-Content/California-Commission-on-Disability-Access-Resources-List-Folder/CCDA-Annual-Reports-to-Legislature-.

no exceptional circumstances for declining jurisdiction. *Compare* ECF 11 at 6-7 (discussing *Arroyo*, 19 F.4th 1202) *with id.* at 8-9 (contending that plaintiff's selection of a federal forum is not "inappropriate forum shopping" that constitutes an "exceptional circumstance."). In doing so, Plaintiff misconstrues the law. *Arroyo* makes abundantly clear that a district court does not abuse its discretion in concluding that a plaintiff's evasion of California's procedural restrictions by filing in federal court is an "extraordinary situation [that] threatens unusually significant damage to federal-state comity." 19 F.4th at 1213. Plaintiff's Response does not disavow this end-run intention. To the contrary, Plaintiff admits that filing in state court would require Plaintiff to incur the high-frequency litigant fee. ECF 11 at 7.

Given that "[t]he same underlying legal dynamics that constituted 'exceptional circumstances' in *Arroyo* are equally present here," the Court "cannot stray from *Arroyo*'s conclusion that the first prong of the § 1367(c)(4) inquiry is met." *Vo*, 49 F.4th at 1171. The Ninth Circuit has unequivocally affirmed, and this Court thus concludes, that "exceptional circumstances" justify the Court's discretion to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act and related state law claims in this action under 28 U.S.C. § 1367(c)(4).

### *2. Compelling Reasons*

Proceeding to the second prong of the § 1367(c)(4) inquiry, Courts must also ensure that there are "compelling reasons for declining jurisdiction" in any given case by "consider[ing] what best serves the principles of economy, convenience, fairness, and comity which underlie pendant jurisdiction doctrine." *Arroyo*, 19 F.4th at 1210 (citation and internal quotation marks omitted). In conducting this case-by-case analysis, the Court finds that unlike in *Arroyo*, there are compelling reasons for declining to exercise jurisdiction at this early stage of litigation. *Cf. id.* at 1214 (finding that at the summary judgment stage, the *Gibbs* values "overwhelmingly favored *retaining* jurisdiction over Arroyo's Unruh Act claim").

Fairness and comity overwhelmingly favor declining supplemental jurisdiction over Plaintiff's state law claims. In *Vo*, the Ninth Circuit cited approvingly the district courts' reasoning that "it would not be 'fair' to the defendants if plaintiffs could bypass the 'limitations California state law has imposed' on Unruh Act claims by simply bringing

them in federal court. In fact, allowing federal courts to be an 'escape hatch' for plaintiffs to avoid the heightened pleading requirements would be an 'affront to the comity between federal courts.'" *Vo*, 49 F.4th at 1168-69, 1172 (finding that the district court did not abuse its discretion in determining that fairness and comity presented compelling reasons to decline jurisdiction over the Unruh Act claim). The Court adopts as its own the reasoning affirmed by *Arroyo* and *Vo* and articulated by numerous district courts in the Central District. *See, e.g.*, *Garcia v. Happy Hour Bar & Grill, Inc.*, No. 2:23-cv-07784-MEMF (MAR), 2024 WL 1448643, at *5 (C.D. Cal. Apr. 2, 2024); *Hernandez v. Team Car Care LLC*, No. 8:24-cv-00593-FWS (JDE), 2024 WL 2107343, at *4 (C.D. Cal. Apr. 16, 2024); *Harrell v. Glob. Rest. Hosp. Grp., LLC*, No. EDCV 24-0954 JVB (DTB), 2024 WL 3005915, at *4 (C.D. Cal. May 23, 2024); *Gougis v. Hernandez*, No. CV 24-3116 PA (MAR), 2024 WL 3050803, at *5 (C.D. Cal. May 10, 2024).

The economy and convenience values also weigh in favor of declining jurisdiction. In *Vo*, the Ninth Circuit clarified that "[t]he fatal flaw we identified in the *Arroyo* district court's order was that it waited until a 'very late stage' of the litigation to decline supplemental jurisdiction." 49 F.4th at 1171-72. Even though "many of the *Gibbs* values *could have* been furthered by refusing supplemental jurisdiction over the Unruh Act claim in that case, doing so at that late point in the litigation would not actually effectuate any of those values" because it would "merely create duplicative work for the state court." *Id.* at 1172. Those concerns are not present here. As in *Vo*, the Court's disposition of supplemental jurisdiction over Plaintiff's state law claims comes "well before" any ruling on the merits of the ADA claim, and therefore "sidesteps the core concern articulated in *Arroyo*." 49 F.4th at 1172.

Therefore, at this early stage of litigation, the *Gibbs* values are best served by declining supplemental jurisdiction over Plaintiff's state law claims. Based on the above case-specific inquiry, the Court concludes that "exceptional circumstances" and "compelling reasons" support its decision to decline supplemental jurisdiction over Plaintiff's Unruh Act and related state law claims. *Vo*, 49 F.4th at 1173.

///

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-08154-MRA-AGR | Date | October 8, 2024 |
| Title | Luz Zendejas v. Mehri Salek Taghizadeh, et al. | | |

## IV. CONCLUSION

For the foregoing reasons, the Court, in its discretion, **DECLINES** to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim and other state law claims. The Court therefore **DISMISSES** Plaintiff's state law claims without prejudice.

**IT IS SO ORDERED.**

- : -

Initials of Deputy Clerk gga